Stephen Franklin GREEN, Appellant,

v.

STATE of Indiana, Appellee.

No. 10S00–9011–CR–706.

Supreme Court of Indiana.

March 12, 1992.

Vicki L. Carmichael, Chief Public Defender, Jeffersonville, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant, Stephen Franklin Green, was convicted by jury of murder and sentenced to 60 years. He raises four issues in this direct appeal:

(1) Whether the evidence is sufficient to sustain his conviction;

(2) Whether the trial court erred in admitting certain photographs;

(3) Whether the trial court erred in failing to grant a mistrial after the prosecutor referred to a prior act of misconduct; and

(4) Whether the jury disregarded the trial court's instructions.

We affirm.

### Facts

On March 7, 1990, Green found the body of Vernice England, the victim, in the basement of her home and notified the police. The time of death was determined to be the morning of March 2, 1990. The cause of death was from several blows to the head with a blunt instrument, such as a hammer.

### Sufficiency of the Evidence

Green first argues that the evidence is insufficient to support his conviction. Our standard of review is well known: We do not reweigh the evidence or judge the credibility of witnesses; instead, we consider only the evidence most favorable to the

verdict and any reasonable inferences to be drawn therefrom. *Fleming v. State* (1991), Ind., 579 N.E.2d 73, 74. It is well settled that a conviction for murder may be sustained on circumstantial evidence alone. *Moore v. State* (1990), Ind., 557 N.E.2d 665, 669. If a reasonable inference can be drawn from the circumstantial evidence presented, the verdict will not be disturbed. *Biggerstaff v. State* (1982), Ind., 432 N.E.2d 34, 36. On appeal, it is not necessary for the circumstantial evidence to overcome every reasonable hypothesis of innocence; rather, it is only necessary that an inference reasonably tending to support the verdict may be drawn from the evidence. *Swafford v. State* (1986), Ind., 498 N.E.2d 1188, 1192.

The evidence which tends to support the verdict is as follows. Green and the victim were friends and had spent much time together for several months prior to her death. The victim was careful with her money and maintained careful records of her finances, including her checking account. The checking account had never been overdrawn until near the time of her death. Green admitted to having used the victim's automatic teller machine card to obtain over $1000 cash. These transactions were likely the reason for the overdrafts. Green testified that he had been given permission to use the ATM card to obtain cash to pay for materials and labor for repairs he was performing on the victim's home, and that he gave the machine receipts to the victim. The receipts were never found and the transactions were not listed in the victim's checkbook. The victim had never used the ATM card in the past. Immediately before her death, the victim had expressed her concern about the overdraft notices to acquaintances and expressed her intent to discuss this matter with the bank. The victim had also expressed some suspicion that Green might have stolen several hundred dollars from her purse in January. This evidence supports a reasonable inference that Green had a motive for killing the victim, either because he was concerned she might find out about the money or perhaps as a result of a confrontation between them.

There was evidence that the victim's neighbor saw Green leaving the victim's yard on the morning of March 2nd carrying something wrapped in a white sheet or towel under his arm. Although the neighbor's statements to the police concerning his observations varied, the inconsistency in his statements was fully presented to the jury and it was for the jury to determine whether to believe the neighbor's in-court testimony. This evidence permits a reasonable inference that Green had the opportunity to commit the murder.

Other evidence tends to connect Green to the crime. He ordered flowers to be sent to the victim's home around noon on March 2nd, but later told police that the victim had announced her intention of going to Kentucky the following day. Although Green saw the victim nearly every day during their relationship, he did not contact her at all between March 2nd and March 7th. Green claimed this was because he knew she was going to Kentucky. However, it was the victim's custom to spend only a day there, and she told no one else she was going out of town. Also, contrary to her usual custom, she had made no arrangements for her papers and mail to be picked up.

On March 7, 1990, when Green went to the victim's home to check on her, he took with him Susan Alexander. Alexander was hesitant to accompany Green to the victim's home because she was under the impression that the victim did not like her. Alexander thought it was odd that Green requested her to go with him.

Additionally, a friend of the victim testified that she saw Green at a club on the night of March 2nd and asked him why the victim was not there. Green told the friend that the victim had partied too much the night before and was not feeling well, although he claimed later that the victim had gone to Kentucky for the weekend.

■ Green argues that this case is so similar to *Manlove v. State* (1968), 250 Ind. 70, 232 N.E.2d 874, that the same result should be reached here. We do not agree.

First, the standard applied in *Manlove* is no longer used by this Court since, at least, *Biggerstaff*, 432 N.E.2d 34, was decided. Instead, even where all the evidence is circumstantial, we use the same scope of review as for cases where there is direct evidence. *Id.* at 36. "If a reasonable inference can be drawn from the circumstantial evidence presented, the verdict is not to be disturbed." *Id.* Second, in *Manlove*, after reviewing the evidence presented at trial, this Court concluded, "in the final analysis, the State's evidence has succeeded *only* in proving that the circumstances as a whole throw a degree of suspicion upon the appellant, and demonstrate only that he clearly had an opportunity to [commit the murder]." 250 Ind. at 83, 232 N.E.2d at 881 (emphasis original). In the instant case, however, the State argues that a jury reasonably could infer that Green had stolen money from the victim's checking account, killed her when she confronted him with this accusation, and removed the murder weapon wrapped in a towel.

Unlike *Manlove*, the evidence here shows more than opportunity. There is evidence from which the jury could infer guilt beyond a reasonable doubt because Green had motive and opportunity, and was seen in close proximity to the murder scene at or about the time of the murder. It is for the jury to judge the credibility of the witnesses, to decide whom to believe, and to assign the weight to be given the evidence presented. The jury is not required to believe defendant's evidence. *Johnson v. State* (1989), Ind., 543 N.E.2d 358, 359. Here the jury, instead, believed the State's evidence. We hold that consideration of all of the evidence reveals sufficient evidence to sustain the conviction for murder.

### Admission of Photographs

■ Green claims the trial court erred in admitting certain photographs because of their gruesome nature. Green filed a motion in limine seeking to exclude autopsy photographs because they did not accurately depict the crime scene. He also objected to the enlarged size of the photographs. The motion was denied. However, Green made no objection when the photographs were admitted into evidence. Thus, any claim of error regarding admission of those photographs is waived. *Conner v. State* (1991), Ind., 580 N.E.2d 214, 220.

■ Alternatively, Green argues that admission of the photographs amounts to fundamental error because their probative value did not outweigh the prejudicial impact. We do not agree. It is well settled that admission of photographs is within the sound discretion of the trial court, and the court's ruling will not be disturbed absent an abuse of discretion. *Kennedy v. State* (1991), Ind., 578 N.E.2d 633, 640. A photograph is generally admissible if it assists the jury in understanding testimony being presented by a witness. *Eddy v. State* (1986), Ind., 496 N.E.2d 24, 26. The fact that a photograph may depict gruesome details of a crime is not a sufficient basis for excluding it. *Fozzard v. State* (1988), Ind., 518 N.E.2d 789, 793.

Here, we find the autopsy photographs were relevant because they tended to assist the jury in understanding the testimony of the pathologist about the victim's wounds and the cause of death. Although the photographs were gruesome, we do not perceive that any tendency to inflame the passions of the jury outweighed their relevant nature. The photographs were properly admitted.

### Prior Bad Acts

Green next argues that the trial court erred in failing to grant his request for a mistrial after the prosecutor elicited testimony of a prior act of misconduct.

■ Prior to trial, the trial court granted Green's motion in limine prohibiting the State from introducing evidence of Green's prior bad acts, and indicated that the State must lay a foundation before any testimony on this issue could be admitted at trial. On recross-examination of Green, the prosecutor asked him, "And you've had problems with other bank accounts, haven't you?" Green answered, "In the past, yes." Argument on defense counsel's objection was heard outside the presence of the jury.

Initially, both the trial court and defense counsel were under the impression that Green had given no response to the question. Upon learning that an affirmative response had been given, defense counsel requested the court to admonish the jury to disregard the question and answer. The court gave an appropriate admonishment. Defendant did not request a mistrial.

Although it is true that evidence of other criminal activity by a defendant is generally inadmissible, *Taylor v. State* (1987), Ind., 506 N.E.2d 468, 470, the question asked here regarding trouble with other bank accounts did not rise to the level of such evidence. Furthermore, this Court may presume that a timely and accurate admonishment by the trial court will cure any defect. *Bell v. State* (1977), 267 Ind. 1, 8, 366 N.E.2d 1156, 1160. Here, we conclude that any possible error in the State's question and Green's answer was corrected by the trial court's timely admonishment to the jury.

*Alleged Jury Disregard of Instructions*

Finally, Green argues that his conviction should be reversed because the jury failed to follow the instructions. The instruction at issue was given at Green's request and read in pertinent part:

> If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the Defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which is consistent with the Defendant's innocence, and reject that which points to his guilt.

Essentially, Green argues that the jury could not have followed this instruction, otherwise, it would have found Green innocent. In our view, this argument amounts to a claim that the evidence was insufficient to support the verdict. Having already addressed that issue in section one of this opinion, we need not repeat it here.

CONCLUSION

For the reasons set out above, the conviction and sentence are affirmed.

SHEPARD, C.J., GIVAN and DICKSON, JJ., concur.

DeBRULER, J., dissents, believing the evidence is insufficient to convict.